UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JESSICA WITHROW,<br><br>              Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>              Defendant. | No. 1:14-cv-3037-FVS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 15, 18.) Attorney D. James Tree represents plaintiff; Special Assistant United States Attorney Jeffrey E. Staples represents defendant. After reviewing the administrative record and briefs filed by the parties, the court GRANTS plaintiff's Motion for Summary Judgment and DENIES defendant's Motion for Summary Judgment.

## JURISDICTION

Plaintiff Jessica Withrow (plaintiff) protectively filed for supplemental security income (SSI) on November 10, 2010. (Tr. 150, 160.) Plaintiff alleged an onset date of November 1, 2009. (Tr. 150.) Benefits were denied initially and on reconsideration. (Tr. 98, 105.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Wayne N. Araki on October 31, 2012. (Tr. 34-74.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 35-64.) Vocational expert Leta Berkshire also testified. (Tr. 64-73.) The ALJ denied benefits (Tr. 18-28) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 24 years old at the time of the hearing. (Tr. 53.) She testified she finished the ninth grade. (Tr. 36.) She did not start tenth grade. (Tr. 37.) She started living on her own at age 16. (Tr. 37.) She testified she doesn't really do anything during the day because she is depressed. (Tr. 41.) She sees a counselor once a month for her depression. (Tr. 41.) She has tried medication for depression, but it made her feel "like a zombie" and she would "freak out." (Tr. 43.) She sleeps a lot. (Tr. 60.) Some days she does not get out of bed. (Tr. 60.) She has anxiety. (Tr. 44.) Plaintiff was diagnosed with ADHD as a child. (Tr. 50.) She has work experience housekeeping and at a fast food restaurant. (Tr. 51.) She feels she cannot work a 40-hour workweek because of her depression, anxiety and mood swings. (Tr. 64.) She feels like she needs to be on medicine and she needs help with her problems. (Tr. 53.) She has no friends. (Tr. 54.) She had a previous boyfriend who was abusive. (Tr. 56.) She has nightmares and feels guilty, worthless, helpless and bad about herself. (Tr. 56-57.) She does not feel safe. (Tr. 57.) She snaps at people by raising her voice and swearing. (Tr. 58-59.) She loses track of what she is doing and starts something else. (Tr. 61.) She has a hard time keeping track of things like her keys and wallet. (Tr. 61.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision

of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or

combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). If the Commissioner does not meet that burden, the claimant is found to be disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found plaintiff did not engage in substantial gainful activity since November 10, 2010, the application date. (Tr. 20.) At step two, the ALJ found plaintiff had the following severe impairments: major depressive disorder; anxiety disorder/post-traumatic stress disorder; and attention deficit hyperactivity disorder. (Tr. 20.) At step three, the ALJ found plaintiff does not have an impairment or combination of impairments

that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 21.) The ALJ then determined:

> [C]laimant has the residual functional capacity to perform a full range of work at all physical exertional levels but with the following nonexertional limitations: the claimant is able to remember, understand and carry out instructions and tasks which are generally required by occupations with a specific vocational and preparation (svp) rating of one or two. Once she has learned the job duties, the claimant will be able to have occasional, superficial interaction with co-workers, supervisors, and the general public. The claimant is able to deal with routine workplace stressors and she is able to make routine workplace decisions and routine adjustments generally associated with occupations of a svp of one or two.

(Tr. 23.) At step four, the ALJ found plaintiff has no past relevant work. (Tr. 26.) At step five, after considering plaintiff's age, education, work experience, residual functional capacity and the testimony of a vocational expert, the ALJ found there are jobs that exist in significant numbers in the national economy that the plaintiff can perform. (Tr. 26.) Thus, the ALJ concluded plaintiff was not under a disability as defined in the Social Security Act since November 10, 2010, the date the application was filed. (Tr. 36.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ erred by: (1) conducting an improper step three analysis; (2) improperly rejecting opinions of treating, examining and reviewing medical sources; (3) conducting an improper credibility analysis; and (4) making an improper step five analysis. (ECF No. 15 at 4-21.) Defendant argues: (1) the step two finding was proper; (2) the ALJ reasonably weighed the medical opinions; (3) the step three finding was proper; and (4) the ALJ's credibility assessment was reasonable. (ECF No. 18 at 3-18.)

**DISCUSSION**

**1.    Credibility**

Plaintiff argues the ALJ conducted an improper credibility analysis. (ECF No. 15 at 14-21.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).[1]

---

[1] Defendant argues that this court must apply the "substantial evidence" standard of review, citing S.S.R. 96-7p. (ECF No. 18 at 13.) A long line of cases, including some which predate S.S.R. 96-7p, are established law which set forth "clear and convincing reasons" as the requisite basis for a negative credibility finding. *E.g.*, *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1999); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Swenson v. Sullivani*, 876 F.2d 683, 687 (9th Cir. 1989); *Gallant v.

The ALJ concluded the record contains findings that demonstrate some limitations related to plaintiff's mental impairments, but it does not support limitations to the extent alleged by claimant. (Tr. 23-24.) The ALJ gave several reasons for rejecting plaintiff's complaints. (Tr. 24-25.)

First, the ALJ cited plaintiff's unwillingness to follow through with prescribed treatment as evidence that her symptoms are not as serious as alleged.[2] (Tr. 24.) Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony. 20 C.F.R. §§ 416.929(c)(3)(iv) and 416.929.(c)(3)(v). The ALJ is permitted to consider the claimant's lack of treatment in making a credibility determination. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). A claimant's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. SSR 96–7p. Notwithstanding, although a claimant may have failed to seek psychiatric treatment for a mental condition, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996), quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989). However, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment, it is reasonable for the ALJ to conclude that the level or

---

*Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984). More recent cases have held that the standard is the yet more stringent, "specific, clear and convincing." *Burrell v. Colvin*, No. 12-16673, 2014 WL 7398892, at *2 (9th Cir. Dec. 31, 2014); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

[2] Plaintiff argues the ALJ made none of the findings required by S.S.R. 82-59 when a claim is denied based on a failure to follow prescribed treatment. (ECF No. 15 at 17.) However, case law indicates that the mandates of S.S.R. 82-59 only apply to claimants who would otherwise be disabled within the meaning of the Social Security Act. *Molina v. Astrue*, 674 F.3d 1104, 1114 n.6 (9th Cir. 2012); *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995.) In this case, the ALJ determined plaintiff is not disabled, so S.S.R. 82-59 does not apply.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

frequency of treatment is inconsistent with the level of complaints. *Molina v. Astrue*, 674 F.3d 1104, 1113 -1114 (9th Cir. 2012).

The ALJ pointed out that at the hearing plaintiff testified she would be willing to work if she had the right counselor and the right medications. (Tr. 24, 53.) However, the ALJ observed the record reflects plaintiff has refused or failed to follow through with medication. (Tr. 24, 229, 233, 280, 290, 360, 366.). For example, plaintiff stopped taking a mood stabilizer after a few days because she "felt that it was not going to work for her" and stopped taking an antidepressant because it "was not working for her" and her mother told her to stop. (Tr. 360.) A nurse practitioner indicated that he felt plaintiff had "sabotaged" herself by stopping medication but prescribed Wellbutrin as an alternative. (Tr. 360-61.) A few weeks later, she reported she had quit Wellbutrin after 10 days because it "My mother was against me taking it, and I just decided I didn't like the way I felt and quit taking it. I really don't like to take meds." (Tr. 366.) The ALJ also observed plaintiff was dropped from therapy several times due to failure to show up for appointments. (Tr. 24, 300, 364, 373, 374.) The ALJ concluded that despite plaintiff's testimony that she would be willing to work if she had counseling and the right medication, her refusal to take medication and failure to follow through with therapy implies her symptoms are not as severe as alleged. (Tr. 24.)

The ALJ also concluded that although she testified that she does not want to take medication, the record reveals that she takes medication when she chooses.[3] (Tr. 24.) Plaintiff indicated that she becomes "freaked out at the thought of taking medication" (Tr. 229) and testified that every time she took medication she would "freak out." (Tr. 43.) The ALJ noted that between January 2010 and November 2010, plaintiff visited the emergency eleven times and "was often prescribed and/or administered pain medication." (Tr. 239, 242, 257, 267, 275.) Of the ER visits cited by the ALJ, three involved prescriptions for short-term treatment (Tr. 239, 267, 275); one involved one-time intravenous administration of medication (Tr. 257), and one

---

[3] Plaintiff takes issue with the ALJ's statement that "the claimant testified that she does not want to take any medications" and asserts plaintiff actually testified she wants to take the right medicine for her. (ECF No. 15 at 18, Tr. 24, 63.) The ALJ acknowledged in the first paragraph of page 24 of the transcript that plaintiff testified she would be willing to work if she had the "right counselor and the right medications."

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

involved medication given at the hospital for immediate treatment of a headache (Tr. 242). Two additional visits involved anxiety-related symptoms and although the ALJ asserted she was prescribed with Ativan, it was actually noted that she had Ativan at home to take as needed. (Tr. 244, 248.) The ALJ found it significant that in September 2010, plaintiff told a provider that she was not interested in taking medications, but two weeks later returned and asked for a medication to help her sleep. (Tr. 229, 233.) However, the ALJ overlooked the note that plaintiff was "very concerned that she'll not be able to take it." (Tr. 229.) As plaintiff demonstrated elsewhere in the record, just because medication was prescribed does not mean she took it. The ALJ also pointed out plaintiff asked for medication to treat ADHD on two occasions (Tr. 24, 203-04, 366-67), but no such medication was prescribed and therefore plaintiff could not take it. The ALJ also asserted she testified she was taking Adderall for ADHD at the time of the hearing, but plaintiff actually testified she was not taking any medication at the time of the hearing. (Tr. 24, 46.) Thus, the ALJ's conclusion that plaintiff was taking medication "when she chooses" is not accurate. (Tr. 24.) Substantial evidence does not support the ALJ's finding that she takes medication selectively; therefore this is not a clear and convincing reason justifying the negative credibility finding.

Another reason mentioned by the ALJ in making the negative credibility determination is that plaintiff has made inconsistent statements, suggesting plaintiff is not reliable. (Tr. 24.) In making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). A strong indicator of credibility is the consistency of the individual's own statements made in connection with the claim for disability benefits and statements made to medical professionals. S.S.R. 96-7p. According to the ALJ, plaintiff testified she had been in special education classes in school, but during a mental health evaluation in 2010 reported she had never been in special education and her school records do not reflect special education classes. (Tr. 191-99, 226.) However, as plaintiff points out, plaintiff's testimony is not as clear as reported by the ALJ. (ECF No. 15 at 18-19.) The ALJ asked plaintiff "were you placed in special education or any special circumstance in school because of [ADHD]?" (Tr. 50.) Plaintiff responded, "Yes." (Tr. 51.) Her school records reflect she went to an alternative school in 2004 and for a few months in 2008 and 2009, but special education classes are not noted in the record. (Tr. 191.) This suggests plaintiff's "yes" response may have been accurate and not inconsistent with later reports of no special

education since alternative school could reasonably considered a "special circumstance" covered by the ALJ's question. The ALJ went on to ask whether plaintiff was in special education for all of her classes or just some and she testified, "Just some, I believe." (Tr. 51.) The testimony is unclear given the ALJ's question and plaintiff's attendance at alternative school. If there is any inconsistency, it is not sufficient to constitute substantial evidence of a clear or convincing reason justifying a negative credibility finding.

The ALJ also noted an inconsistency when plaintiff reported she had never been abused in any way during a mental health evaluation, but reported elsewhere she had been in an abusive relationship between the ages of 15 and 20. (Tr.24, 173, 226.) Plaintiff argues the "widely accepted and acknowledged fact that domestic violence is vastly underreported" explains why plaintiff made two different statements on this topic. (ECF No. 15 at 19.) The ALJ acknowledged this fact is not material to the disability assessment, yet considered it as an evidence of an overall lack of credibility. (Tr. 24.) However, one inconsistent statement unrelated to the disability determination is simply not sufficient evidence that plaintiff is not a credible witness.

A third reason given by the ALJ in making the negative credibility finding is that plaintiff alleges she has difficulty getting along with co-workers and she snaps at people. (Tr. 24, 51-53, 58-59.) The ALJ found this statement not credible because there are no such symptoms reflected in the record. (Tr. 24.) The ALJ pointed out that plaintiff was described as "pleasant" and "cooperative" throughout the record by various healthcare providers. (Tr. 25, 214, 226, 274, 281, 285, 291, 295, 301, 341, 355, 358, 361.) According to the ALJ, "there is nothing in the medical record that documents these issues." (Tr. 25.) However, working with others and seeking help from professionals are not comparable situations. It is not reasonable to expect evidence that plaintiff snaps at professionals to confirm claims of not getting along with coworkers. Additionally, the ALJ acknowledged Dr. McClelland found plaintiff "may struggle to interact with co-workers and the public" and included limitations pertaining to interaction with coworkers in the RFC. (Tr. 23, 25, 297.) Thus, Dr. McClelland's findings and the social limitations in the RFC are consistent with plaintiff's claims. Therefore, plaintiff should not be found less credible for making claims of difficulties in work-related interactions.

Furthermore, the ALJ's assessment of the evidence is selective. For example, the ALJ cites a checkbox mental status summary which contains checks next to "cooperative" and "compliant," but also includes checks next to "agitated," "apprehensive," "anxious," and

"depressed" and cites plaintiff's statement that "I can't handle being around people." (Tr. 214.) The ALJ cited notes from a therapy session which describe plaintiff as "cooperative," but include other descriptors such as disheveled, agitated, restless, anxious, irritable, depressed, distracted, and having only fair impulse control, judgment and insight. (Tr. 281.) Notes from another therapy session include similar descriptors and indicate that "Patient's self-perception is abasing[,] often feels emotionally attacked" and "thought content reveals paranoia." (Tr. 285.) Plaintiff presented to Dr. Rodenberger as "alert, oriented and cooperative" but her mood was depressed, anxious and irritable. (Tr. 291.) With another therapist, plaintiff was "cooperative" but also "constricted" and "irritable." (Tr. 301.) In another record cited by the ALJ, plaintiff was "pleasant at times" and "cooperative" but was also nervous, anxious and fidgety. (Tr. 355.) Additionally, contrary to the ALJ's assertion, there is evidence that plaintiff had an outburst in a clinical setting. When she visited Dr. Dove in September 2011, plaintiff's affect was irritable and anxious. She "remained very irritable throughout our entire visit, was confrontational and with poor eye contact." (Tr. 203.) The visit ended because "her anger was escalating." (Tr. 204.) In July 2011, plaintiff was "irritable and angry" and became defensive when questioned about treatment. (Tr. 300.) The ALJ concluded that plaintiff is "pleasant" and "cooperative" without noting her observed irritability and other behaviors which could lead to conflict in a work situation. Therefore, this is not substantial evidence that plaintiff's claims of difficulty getting along with others at work are inconsistent with her behavior in a clinical setting.

Furthermore, plaintiff points out certain of the ALJ's questions and statements at the hearing were inappropriate. (ECF No. 15 at 16.) The ALJ asked plaintiff's age and when she answered the ALJ said, "Don't you think it's time to grow up?" (Tr. 53.) This is neither a relevant nor appropriate question. Plaintiff testified that the medicines she tried do not work and the ALJ asked, "Okay, do you think medicine is going to fix everything?" (Tr. 53.) Then the ALJ asked, "What if it doesn't and you have to do something about it to fix the problem? Are you willing to do that?" (Tr. 53.) When plaintiff said yes, the ALJ persisted, "So what are you willing to do to help fix the problem? Are you willing to get up out of bed every day and get dressed, no matter how you feel?" (Tr. 53-54.) Plaintiff answered that "It's easier said than done, but yes." (Tr. 54.) The ALJ continued to press, "So you're willing to do that? So how willing are you – how hard are you willing to try to do that?" (Tr. 54.) Consistent with her earlier testimony, plaintiff responded that with medicine and counseling it would be easier. (Tr. 54.) Again, the

ALJ pressed, "So basically, you think that other people are going to help you do that? Is that what I'm hearing?" (Tr. 54.) The ALJ's questions were inappropriately condescending and patronizing. On remand, this matter should be referred to another ALJ.

**2.   Opinion Evidence**

Plaintiff argues the ALJ failed to properly consider the opinions of her treating, examining and reviewing medical sources. (ECF No. 15 at 4-13.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

If a treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, if contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

**a.   Dr. McClelland**

Plaintiff argues the ALJ improperly rejected the opinion of Dr. McClelland, an examining psychiatrist. (ECF No. 15 at 5-7.) Dr. McClelland examined plaintiff in June 2011. (ECF No. 292-97.) Dr. McClelland diagnosed major depressive disorder, severe, recurrent; ADHD; and PTSD. (Tr. 296.) Dr. McClelland noted plaintiff had been misdiagnosed with bipolar disorder and needed treatment for ADHD. (Tr. 296.) He opined that if plaintiff could receive appropriate

treatment, there is a good chance that she could show significant improvement. (Tr. 296.) Functionally, Dr. McClelland opined that plaintiff should be able to perform simple and repetitive tasks, but may struggle with detailed and complex tasks. (Tr. 297.) Dr. McClelland also concluded plaintiff's ability to accept instructions from supervisors may be affected and may cause her to need special or additional instructions; that she may struggle to interact with coworkers and public due to social anxiety; that her ability to deal with the usual stress of the workplace may be impacted because she has poor coping skills, and her attendance at work may be impacted by her fear of leaving home; and that she may struggle to complete a normal workday or workweek without interruptions due to panic attacks, anxiety, or depression. (Tr. 297.)

The ALJ gave Dr. McClelland's opinion significant weight because it is consistent with the exam results contained in the evaluation and observations noted on exam. (Tr. 25.) However, plaintiff argues the ALJ did not incorporate all of the limitations assessed by Dr. McClelland into the RFC. (ECF No. 15 at 6-7.) Indeed, the RFC notes plaintiff is limited to "occasional, superficial interaction with co-workers, supervisors, and the general public." (Tr. 23.) This could reasonably be considered to take into account Dr. McClelland's assessment of social limitations. However, the RFC also states, "The claimant is able to deal with routine workplace stressors and she is able to make routine workplace decisions and routine adjustments generally associated with occupations of a svp of one or two."[4] (Tr. 23.) Dr. McClelland identified a limitation on the ability to deal with "the usual stress of the workplace," yet the RFC indicates plaintiff would be "able to deal with routine workplace stressors." (Tr. 23, 297.) The ALJ did not explain this inconsistency or give any reason for rejecting Dr. McClelland's opinion regarding that limitation. Additionally, Dr. McClelland identified limitations on attendance and the ability to complete a normal workday or workweek without interruption which are not accounted for in the RFC. (Tr. 297.) The RFC formulated by the ALJ is therefore not consistent with Dr. McClelland's opinion.

---

[4] Specific vocational preparation, or "SVP," refers to the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the facility need for average performance of a job. DICTIONARY OF OCCUPATIONAL TITLES, Appendix C II (4th Ed.). An SVP of one or two means unskilled work. S.S.R. 00-4p.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

The ALJ gave no reasons for rejecting limitations assessed by Dr. McClelland which are not accounted for in the RFC despite giving the opinion significant weight. Thus, the ALJ erred.[5]

### b. DSHS Evaluations

Plaintiff argues the ALJ improperly rejected the opinions of Christopher Clark, MEd., LHMC; Russell Anderson LICSW; and Dick Moen, MSW, on DSHS Psychological/Psychiatric Evaluation forms.[6] (ECF No. 15 at 7-11.) Each opinion was signed by either Dr. Qadr or Dr. Rodenberger as a "releasing authority."[7] (Tr. 221, 316, 340.)

---

[5] Defendant argues the limitations assessed by Dr. McClelland and omitted from the RFC were not "concrete" limitations since Dr. McClelland used the term "may" to identify each limitation. (ECF No. 18 at 5-6.) This argument fails for two reasons. First, the ALJ incorporated the social limitation identified by Dr. McClelland despite the use of the term "may" in describing the limitation, so use of the term "may" does not necessarily mean a limitation is not "concrete enough" for the RFC. (Tr. 297.) Second, the ALJ did not assert this reason or any other reason for rejecting limitations assessed by Dr. McClelland. The court is constrained to review only those reasons asserted by the ALJ. *Sec. Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001).

[6] The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

[7] The signatures of Dr. Qadr and Dr. Rodenberger appear to grant authority to release the evaluation rather than reflect concurrence or adoption of the opinion by an acceptable medical source. Notwithstanding, the court need not decide whether the appropriate standard for rejecting

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

Mr. Clark completed a DSHS evaluation form in January 2010. (Tr. 208-13.) He diagnosed bipolar disorder, ADHD, and anxiety disorder. (Tr. 210.) He assessed two severe, three marked and three moderate functional limitations. (Tr. 211.) In July 2010, Russell Anderson, LICSW, completed a DSHS evaluation form. (Tr. 216-21.) Mr. Anderson diagnosed bipolar II disorder with delusional thinking; anxiety disorder NOW; and ADHD NOS. (Tr. 218.) Mr. Anderson assessed one severe, six marked, and three moderate functional limitations. (Tr. 219.) In June 2011, Dick Moen, MSW, completed a DSHS evaluation form. (Tr. 336-40.) He diagnosed PTSD and ADHD and assessed two marked and six moderate functional limitations. (Tr. 337-38.)

The ALJ gave little weight to all three opinions because "they appear to be primarily based upon the claimant's own reported symptoms, and for the reasons set forth above, she is not entirely credible." (Tr. 26.) The ALJ's reason for rejecting the DSHS evaluations fails because the credibility finding is not based on clear and convincing reasons supported by substantial evidence, as discussed, *supra*. The ALJ gave no other reasons for rejecting the opinions; therefore, they were not properly rejected and the ALJ erred.

### c.    Dr. Eisenhauer

Plaintiff argues the ALJ failed to consider the opinion of Dr. Eisenhauer, a reviewing psychologist. (ECF No. 15 at 4, 12.) Dr. Eisenhauer completed a Certification for Medicaid: GAX Decision form dated August 22, 2011. (Tr. 352.) Upon reviewing the record, Dr. Eisenhauer noted several MSW[8] evaluations contained diagnoses of PTSD and ADHD, assessed marked limitations for complex tasks and for tasks around the public, and determined plaintiff is moderately limited in all other areas. (Tr. 352.) Dr. Eisenhauer summarized Dr. McClelland's findings and observations, then determined she "would approve for 12.06."[9] The ALJ did not assign weight to or address Dr. Eisenhauer's opinion. The ALJ need not discuss all evidence presented, but must explain why significant probative evidence has been rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Defendant argues Dr. Eisenhauer's report is

---

the opinions is "specific and legitimate" or "germane" because the sole reason cited by the ALJ is based on error regardless of reviewing standard.

[8] Master of Social Work

[9] Presumably this references Listing 12.06, anxiety-related disorders.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 15

neither significant nor probative because it merely restates the reports of other treating and examining providers. (ECF No. 18 at 9.) However, the ALJ is charged with evaluating all medical opinions, regardless of source. 20 C.F.R. § 404.1527. Second, the opinion contains more than a restatement of evidence from other providers, it includes Dr. Eisenhauer's conclusion that she approves a finding under 12.06. Furthermore, the ALJ gave significant weight to the opinion Dr. Donahue, the DDS reviewing psychologist, which is also based on the opinions of treating and examining providers. (Tr. 25-26.) As a result, the ALJ erred by failing to consider Dr. Eisenhauer's opinion. On remand, the opinion must be considered by the ALJ and assigned weight.

### d. DDS Assessments

Plaintiff argues the ALJ failed to properly account for the opinions of the DDS[10] reviewing psychologists, Dr. Clifford and Dr. Donahue. (ECF No. 15 at 12-13.) Dr. Clifford reviewed the record in June 2011. (Tr. 79-83.) Dr. Clifford assessed moderate limitations in five areas related to concentration and persistence. (Tr. 82.) He opined that plaintiff appears to be intellectually capable of understanding, remembering and carrying out simple directions and tasks for many types of unskilled work, but that concentration may be variable due to symptoms. (Tr. 82.) Dr. Clifford also determined plaintiff is moderately limited in four social areas, but "is able to maintain brief and superficial contact with others in the workplace." (Tr. 83.) Lastly, Dr. Clifford indicated plaintiff is moderately limited in one area related to adaptation, but "has the ability to adapt to introduced changes." (Tr. 83.) In August 2011, Dr. Donahue reviewed the record and made an identical assessment. (Tr. 91-95.)

Plaintiff argues the ALJ should have incorporated the limitations identified as moderate, marked and severe into the RFC and hypothetical to the vocational expert. (ECF No. 15 at 13.) However, the DDS mental residual functional capacity form indicates "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s) in the explanation text boxes." (Tr. 82, 94.) Thus, the ratings of moderate, marked, and severe are not part of the mental residual functional capacity assessment to be incorporated in the RFC. This is consistent with case law which indicates individual medical opinions are preferred over check-box reports. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). As a result, the limitations identified by Dr. Clifford and Dr. Donahue appear to be incorporated in the RFC and there is no error.

### 3. Step Five

Plaintiff argues the ALJ conducted an improper analysis at step five of the sequential evaluation. Because of errors in considering the psychological opinion evidence and in the credibility determination, the RFC is not properly supported and the step five finding is in question. As a result, the matter must be remanded for reconsideration of the evidence and a new sequential evaluation.

---

[10] Disability Determination Services, a branch of the Washington State Department of Social and Health Services

# CONCLUSION

The ALJ's decision is not supported by substantial evidence and free of legal error. This matter should be remanded to a different ALJ for reconsideration of the evidence and a new sequential evaluation.

. **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(ECF No. 15)** is **GRANTED.** The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2. Defendant's Motion for Summary Judgment **(ECF No. 18)** is **DENIED**.

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

DATED February 11, 2015

*s/ Fred Van Sickle*
Fred Van Sickle
Senior United States District Judge